IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES HENSLEY MITCHELL, II            §
(TDCJ No. 1851936),                     §
                                        §
              Petitioner,               §
                                        §
V.                                      §          No. 3:13-cv-4754-M-BN
                                        §
WILLIAM STEPHENS, Director,             §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                        §
              Respondent.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Charles Hensley Mitchell, II, a Texas prisoner, proceeding *pro se*, has

filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the

reasons explained below, the application should be denied.

**Background**

After a Dallas County, Texas jury found Petitioner guilty of aggravated assault

with a deadly weapon, he entered into a plea agreement as to sentencing, and the trial

court sentenced him to 7 years' imprisonment. *See State v. Mitchell*, F09-60722-R

(265th Dist. Ct., Dallas County, Tex. Nov. 11, 2010). His conviction and sentence were

affirmed on direct appeal. *See Mitchell v. State*, No. 05-11-00022-CR, 2012 WL 1501110

(Tex. App. – Dallas Apr. 30, 2012). And the Texas Court of Criminal Appeals (the

"TCCA") refused his petition for discretionary review. *See Mitchell v. State*, PD-0601-12

(Tex. Crim. App. Sept. 12, 2012).The TCCA also denied his state habeas application

without written order, on the findings of the trial court, which were made without a
live hearing. *See Ex parte Mitchell*, WR-65,486-06 (Tex. Crim. App. Aug. 21, 2013); *see
also* Dkt. No. 39-1 at2; Dkt. No. 41-1-18.

On direct appeal, the Dallas Court of Appeals presented the following summary
of the case:

**The State's Witnesses**

[Petitioner] was charged with intentionally and knowingly threatening
his nephew, Christopher Houston, with a hatchet. The State's witnesses
included Christopher, his mother Ruth Houston, his sister Crystal
Houston, and police officers who responded to the scene.

Ruth testified that her mother, Albert Lynn Mitchell, lived alone in a
home in Oak Cliff until she was transferred to an "assisted living or
nursing home." She granted Ruth a general power of attorney so that
Ruth could pay Albert's bills and take care of Albert's home. Ruth or her
children checked on Albert's home every day "to insure that everything
was okay and that no one was in the house." On the date of the offense,
Ruth and her daughter Crystal went to Albert's home and discovered that
[Petitioner] was inside the home without Ruth's permission and had put
a third lock on the door to keep other people out. When Ruth tried to
remove the lock [Petitioner] opened the windows and started cussing at
her and later "came out with a butcher knife and an ax." [Petitioner] said,
"I'm going to 'F' you up, you know, this is my house." Ruth's daughter
called the police but [Petitioner] left before they arrived. Ruth returned
to Albert's home later that day and saw her son fighting with [Petitioner].
At that time [Petitioner] had the same ax or hatchet in his hand that
Ruth had seen earlier.

Christopher testified that on the date of the offense he was in training to
be a peace officer with the Dallas Sheriff's Department. When he finished
his training for the day he checked his cell phone voice mail and retrieved
a message from his sister about something going on at his grandmother's
home. His sister "sounded panicked." Christopher went home to change
out of his uniform and then went to his grandmother's home. When he
arrived he saw a hand-made "no trespassing" sign and "a garden hose
wrapped from the fence to the porch."Christopher got out of his car and
attempted to remove the hose and sign. He saw [Petitioner], his uncle,
between the home and the garage. Christopher asked [Petitioner] what

-2-

was going on. In response, [Petitioner] picked up "a small hatchet or a small ax," walked towards Christopher, raised the hatchet, and said "get off my property." As Christopher tried to "talk him down," [Petitioner] swung the hatchet at him and the two men started fighting. According to Christopher, "the whole tussle was trying to get the hatchet out of [Petitioner's] hand." When [Petitioner] swung the hatchet it came so close to Christopher's head that he could hear the noise of it "whizzing past" his ear. Ruth pulled up and called the police. Christopher took the hatchet away from [Petitioner] and restrained him until the police arrived.

Officer Andrea Isom of the Dallas Police Department was the first officer to arrive at the scene after the police were called. When she arrived at the scene she spoke to Christopher and [Petitioner]. They each claimed that the other man was the aggressor. Officer Isom decided to arrest [Petitioner]. She explained,

> Upon speaking to [Christopher], I was told that [Petitioner] had swung a hatchet at him, putting him in fear for his life, which is an aggravated assault with a deadly weapon, and they are family members as well. [Christopher] is the nephew of [Petitioner], and that's a family violence situation[.]

Officer Isom also identified State's Exhibit 13 as the hatchet that Christopher said [Petitioner] had used to attack him.

**Defense Witnesses**

Two eyewitnesses testified in [Petitioner]'s defense. Mobutu Hurd testified that she lives near [Petitioner]'s mother's home. On the day of the offense she heard Christopher's car come around the corner "fast." The car stopped suddenly in front of the house. Christopher jumped out and ran toward [Petitioner], who was holding "a machete or an ax." According to Hurd, Christopher "started punching on" [Petitioner], and [Petitioner] never punched back or swung the ax. During cross-examination she was asked whether [Petitioner] raised the ax up in the air or had it down at his side. She responded, "[H]onestly, when his nephew got out of the car, I watched the nephew. I can't remember if he had it up or down, and I don't want to say because I'm not for sure." Hurd did not talk to the police after they arrived.

Darrell Brooks also lived in the neighborhood and testified for the defense. He testified that he saw Christopher's car pull up "real quick like

he was doing a drug bust or something." Christopher got out and ran towards [Petitioner]. Christopher was "cussing and hollering, telling him he was going to die today." According to Brooks, Christopher slung [Petitioner] to the ground, put his right hand around [Petitioner]'s throat, and was choking him. Brooks and another man walked over to [Petitioner] and Christopher, and Brooks said, "[M]an, you're killing him." The other man pulled at Christopher and told him to leave [Petitioner] alone. Then Brooks walked away. During cross-examination Brooks acknowledged that he has been convicted of several offenses including murder, burglary, assault, and DWI.

**Rebuttal Testimony**
After [Petitioner] rested the State called Christopher as a rebuttal witness. He testified that no one approached him, spoke to him, or put hands on him while he was fighting with [Petitioner]. Christopher also testified that he did not punch [Petitioner] or touch his throat.

*Mitchell*, 2012 WL 1501110, at *1-*2.

Through his federal habeas application, timely filed on or about November 25, 2013, s*ee* Dkt. No. 3 at 9, Petitioner asserts that both his counsel at trial and on direct appeal rendered constitutionally ineffective assistance [Grounds 1 and 4], that the trial court erred by denying his request for a jury instruction on self-defense [Ground 2], and that the prosecutor failed to disclose exculpatory evidence "and used perjured documents and testimony at trial" [Ground 3], *see* Dkt. Nos. 3, 4, & 5.

## Legal Standards

A federal court will not reach the merits of claims denied by the state court on state procedural grounds if the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *modified by Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1316-19 (2012). But, if the state procedural determination is based on

state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows than an exception to the bar applies, the federal court must resolve the claim without the deference that the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 110 Stat. 1214, otherwise requires. *See Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA's deferential standard of review would not apply to a procedural decision of the state court); *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997))); *Mercadel v. Cain*, 179 F.3d 271, 274-75 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court).

But, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and

time again, that the AEDPA, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to

meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was

objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision"(quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

Before proceeding to Petitioner's particular claims, the undersigned first must address Petitioner's argument that the state court failed to develop the facts in his habeas action. *See, e.g.*, Dkt. No. 30 at 1-2 ("Petitioner stands on his Petition and Legal Brief. The State's response is not based on the whole record presented in the State Habeas, as the State prevented the development of the facts in the Petitioner's case. Petitioner made multiple request[s] to the court for development of the facts claimed in his state habeas application and brief [which] were timely filed."). In support of this argument, Petitioner generally points to various motions that he filed in the state court and asserts that the state court neither granted his motions nor afforded him an evidentiary hearing before issuing its findings of fact and conclusions of law to the TCCA. *See id.* at 2-3. And, indeed, Petitioner has continued to file numerous motions – many of which have sought discovery – in this federal habeas action. *See, e.g.*, Dkt. No. 54.

But, as more fully discussed below, Petitioner has not shown that, by only affording him a "paper hearing" – "where the state judge did not hear live testimony, but instead relied on affidavits," *Perillo v. Johnson*, 79 F.3d 441, 446 (5th Cir. 1996) – the state court denied him a full and fair hearing on his habeas claims.

> A full and fair hearing does not necessarily require live testimony. Indeed, [the United States Court of Appeals for the Fifth Circuit has] repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims, especially where, as here, the trial court and the state habeas court were one in the same. *See [Perillo*, 79 F.3d] at 446-47 (listing cases where the presumption of correctness, which attached to factual

> determinations made after a full and fair hearing under the pre-AEDPA version of § 2254(d), was established with only a paper hearing before the same state judge who presided over the criminal trial).

*Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000); *accord Avila v. Quarterman*, 560 F.3d 299, 308 n.5 (5th Cir. 2009); *cf. Clark*, 202 F.3d at 766 ("To find an abuse of discretion which would entitle [a habeas applicant] to discovery and an evidentiary hearing to prove his contentions, [the court of appeals] would necessarily have to find that the state did not provide [the applicant] with a full and fair hearing and [the court of appeals] must be convinced that if proven true, [applicant's] allegations would entitle him to relief." (citing *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998))).

Furthermore, to the extent that Petitioner contends that he is entitled to further development of the record in this Court, including an evidentiary hearing, 28 U.S.C. § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Petitioner has not met the statutory criteria.

Thus, for all these reasons, further development of the record is not necessary to assess the claims in Petitioner's Section 2254 habeas application. This action can therefore be decided on the existing record, and the interests of justice do not require a hearing.

I.   **This Court is procedurally barred from considering Petitioner's second ground for relief, concerning the trial court's denial of his request for a jury instruction on self-defense.**

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *See Sawyer*, 505 U.S. at 338. The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("A federal habeas court 'will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground.'" (quoting *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004))). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982); *see also Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).

Here, as to Petitioner's second ground for relief, the state habeas court found that, because Petitioner "did not raise any issue regarding the court's [jury] charge in his direct appeal," that issue could not "be considered in [his] writ of habeas corpus." Dkt. No. 41-1 at 3.

Under Texas law, claims that could have been raised on direct appeal and that are presented for the first time on state collateral review are procedurally defaulted.

-11-

*See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "'the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review.'" *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (quoting *Busby*, 359 F.3d at 719). Here, Petitioner has failed to establish cause and actual prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. This claim is therefore procedurally barred. *See, e.g.*, *Benitez v. Stephens*, No. 3:13-cv-1483-L, 2013 WL 6869406, at *10-*11 (N.D. Tex. Dec. 31, 2013).

Petitioner's second ground for habeas relief should be denied. The Court should also deny Petitioner's motion for summary judgment as to this ground [Dkt. No. 66].

## II.   Petitioner has not shown that the state court's determination that neither his trial nor his appellate counsel rendered constitutionally ineffective assistance is unreasonable.

The undersigned has reviewed the Petitioner's Sixth Amendment claims – asserted against his trial counsel [Ground 1] and his counsel on direct appeal [Ground 4] – under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 133 S. Ct. 1584 (2013).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by

*Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.

Petitioner asserts that his trial counsel was constitutionally ineffective because (1) counsel "gave erroneous [advice] to [Petitioner] that he did not have to take [the] stand to get self-defense" instruction; (2) counsel "allowed [Petitioner] to be tried on a non-[existent] indictment"; (3) counsel "fail[ed] to request defense of property where evidence supported it"; and (4) counsel "allowed [a] prejudicial invalid document to be introduced without objection or examination." Dkt. No. 3 at 6.

As to this claim, the state habeas court obtained an affidavit from Petitioner's trial counsel, Nathan Kight, *see* Dkt. No. 41-1 at 8-13, and first found that "Mr. Kight is a trustworthy individual and that the statements made by him in his affidavit are worthy of belief," *id.* at 2; *see Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." (citations omitted)). The state habeas court then found that Mr. Kight's affidavit, which was found to be "true" and "correct" – considered in conjunction with

-15-

the state habeas application and the state court record – disposed of this claim. *See*

Dkt. No. 41-1 at 2-3. Specifically, the state habeas court found:

> a. Mr. Kight states that he "apprised Mr. Mitchell of his inviolable right
> to testify/not testify. I apprised Mr. Mitchell of the pros and cons of both
> choices and he chose to not testify."
>
> b. Mr. Kight indicates that "because he knew the indictment had been
> properly returned, I saw no reason to object and believed that any
> objection would, at most, delay trial by a few seconds and, at worst,
> demonstrate to the court that I would make pointless objections and thus
> undermine my credibility for purposes of trial."
>
> c. Mr. Kight indicates that "I could not make such an argument (for
> defense of property) consistent with the evidence because there was no
> evidence (the complainant) engaged" in an act requiring the use of deadly
> force.
>
> d. Mr. Kight states that he "took the sponsoring witness on voir dire and
> lodged objections to the State's exhibit (a power of attorney) under the
> Confrontation Clause, hearsay, and authentication." The Court overruled
> his objections and allowed the admission of the exhibit.

Dkt. No. 41-1 at 2-3.

In light of the state habeas court's findings, Petitioner has failed to show that

the state court's conclusion – "that [he] was in no way denied his right to effective

assistance of counsel at trial," Dkt. No. 41-1 at 3 – amounts "to an unreasonable

application of *Strickland* or an unreasonable determination of the evidence." *Garza v.

Stephens*, 738 F.3d 669, 680 (5th Cir. 2013).

As to his counsel on direct appeal, Petitioner asserts that she "fail[ed] to raise

reversible error for preservation on further appeal and that [such asserted error] could

have overturned his conviction." Dkt. No. 3 at 7. In his brief, Petitioner clarifies that

this claim pertains to appellate counsel's failure to raise the denial of a self-defense

jury instruction on direct appeal. *See* Dkt. No. 4 at 27-29 (among other things, asserting that "[a]t trial, the defense theory was self-defense. The entire tone of the defense during trial was toward self-defense....").

Similar to its approach as to Petitioner's Sixth Amendment claim against his trial counsel, the state habeas court obtained an affidavit from his counsel on direct appeal, April E. Smith, *see* Dkt. 41-1 at 15, and also found "that Ms. Smith is a trustworthy individual and that the statements made in her affidavit are worthy of belief," *id.* at 3; *see Pippin*, 434 F.3d at 792. The state habeas court then found that "Ms. Smith states that she 'carefully reviewed the record and raised two issues that I believed had merit and might result in reversal of the case.'" Dkt. No. 41-1 at 4.

The court concluded that Petitioner "was in no way denied his right to effective assistance of counsel on appeal," because "[a]ppellate counsel need not raise all possible claims of error in order to be effective." *Id.* (citations omitted); *see also* Dkt. No. 41-1 at 10, Kight Aff. ("Choice two was that Mr. Mitchell could stay off the stand[, which he did,] and I would argue that he was simply attacked as Hurd and Brooks testified to. I explained that if he did not testify I would still ask for a self-defense charge but I doubted the Judge would give it."). And Petitioner has not shown that the state court's conclusion that his appellate counsel was not constitutionally ineffective is either an unreasonable application of *Strickland* or an unreasonable determination of the evidence. *See Garza*, 738 F.3d at 680.

Petitioner's first and fourth grounds for habeas relief should be denied.

**III.    The state court did not unreasonably apply clearly established federal law to determine that the prosecutor neither suppressed exculpatory evidence nor used false or misleading evidence.**

Petitioner's third ground for relief appears to be that the prosecutor committed misconduct (1) since she knew the residence was Petitioner's because her office had sent letters to him at the residence and (2) because she used an allegedly false document (a power of attorney) at his trial. Petitioner states that, because the letters established his right to be at the residence, they were exculpatory and further asserts that the prosecutor suppressed the letters.

"A prosecutor's duty not to knowingly present false evidence is related to, but conceptually distinct from, the prosecutor's duty to reveal exculpatory evidence to the defense." *Ogle v. Johnson*, 696 F. Supp. 2d 1345, 1362-63 (S.D. Ga. 2009) (citing *Brown v. Wainwright*, 785 F.2d 1457, 1464 (11th Cir. 1986)); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution").

"To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). But "due process is [ ] implicated by the prosecution's introduction or allowance of false or perjured testimony [only when] the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *United States v. Brown*, 634

F.2d 819, 827 (5th Cir. 1981) (citations omitted); *see also Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959).

A successful constitutional claim under *Brady* and its progeny that exculpatory evidence was suppressed "has three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (noting as to *Brady*'s third "basic element" that there must be "a reasonable probability that prejudice ensued – in other words, 'materiality'").

As to Petitioner's claimed *Giglio* and *Brady* violations, the task for this Court is not to determine whether the state habeas court's application of clearly established federal law is correct. Instead, this Court's review is limited to determining whether the state habeas court's decision constitutes an "unreasonable application" of that law. Petitioner therefore must show that the state habeas court's rulings as to these claims were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Here, the state habeas court relied on an affidavit from the prosecutor, Renee L. Harris, *see* Dkt. No. 41-1 at 17-18, whom the Court found to be "a trustworthy individual," and further found "that the statements made in her affidavit are worthy

of belief," *id.* at 5. The state court then relied on the following testimony by Ms. Harris

to find "no evidence of prosecutorial misconduct" –

> a. "I allowed the public defender in this case, Nathan Kight, full access
> to my entire file."
>
> b. "The charged offense was aggravated assault; therefore, I did not deem
> the issue of whether or not [Petitioner] was trespassing to be relevant."
>
> c. "The State did not allege that [Petitioner] was trespassing, only that
> he has committed an aggravated assault at a particular location;
> therefore, any evidence of [Petitioner]'s right to be on the property would
> not have been exculpatory."
>
> d. "I offered the certified power of attorney into evidence believing in
> good faith that it was valid and the evidence was admitted by Judge
> Stoltz."
>
> e. "I would never sponsor testimony that I believed to be perjured and I
> continue to believe that the State's witnesses testified truthfully."

*Id.*

Plaintiff has established neither that the letters were exculpatory nor that they

were suppressed. And he has also failed to establish that the power of attorney was

false, much less that the prosecutor knew that it was false. Therefore, he cannot

establish that the state habeas court's conclusions as to his *Giglio* and *Brady* claims

were unreasonable applications of clearly established federal law.

Petitioner's third ground for habeas relief should be denied.

### Recommendation

Petitioner's application for writ of habeas corpus should be denied. To the extent

that the undersigned reviewed the entire record in this case, including Petitioner's

motions to supplement his legal memorandums [Dkt. Nos. 59 and 62], those motions

should be granted. But, because Petitioner is not entitled to relief on any grounds, his motion for summary judgment as to his second ground for relief [Dkt. No. 66] should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 16, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE